O’Neael J.,
dissenting. In this case, I have the misfortune to differ from a majority of the Court, who, as I understand them, place their opinion on one of two grounds, viz: 1st. for error of law on the part of the judge below, in ruling that unlawful acts, committed under and in enforcing a right of entry, might make the defendants trespassers ab initio. 2d. for excessive damages. Some of the Court, I believe, predicate their opinion of the 1st ground, and others of the 2d; both however arc, I think, erroneous. 1st. The doctrine of trespass ab initio, as we understand it, may for ought I know, be considered as commencing in the six Carpenters case, 8 Co., 146., although it is manifest from that case, that it has its foundation in much earlier times. That case is, I think, full to the point ruled below. In it, it was first resolved, when li entry, authority or license is given to any one by the law, and he doth abuse it, he shall be a trespasser ab initio; but where an entry, authority or license is given by the party, and he abuses it, then he must be punished for his abuse, but shall not be a trespasser ab initio.” The distinction taken is between authority derived from the law, and that derived from the party. In the one, abuse makes the whole a trespass, in the other the abuse is alone so *323 regarded. What is meant by entry, authority or license, given by law? Does it mean, as some of my brethren suppose, only cases of that kind, when by virtue of process, or some legal authority, such as a right to distrain, one enters, and then does some thing unlawful? I have no doubt it means all that and a great deal more. Mr. Chitty has, I presume, led to the mistake in his 1st volume of Pleading, 173. He is speaking of personal property, and the effect of an abuse of the possession at first legally acquired. In such connection, he says, the person who first acted with propriety under an authority or license given by law, abuses it, in which case he says, the taking, as well as the real tortious act, may be stated to be illegal. This is all right, and is as far as the matter before him required to be stated. At 180, however, he puts the principle right in reference to land; he says, “though the entry were lawful, yet., by a subsequent abuse of an authority in law to enter, as to distrain, &c., the party may become a trespasser ah initio.” The example given, is, what has led again to the mistake into which I fear my brethren have fallen? How can a mere illustration narrow a legal principle? The right of entry on a man’s soil, in the possession of another, what is that but an entry given by the law? If this must be answered affirmatively, does it not follow that an abuse of this legal right will make the entry as well as the subsequent abuse, tortious? I think there can be no doubt about it. But let it be tested another way. He who is in possession of land, has jorima facie an action of trespass against any one who may enter upon him. The owner, however, who has both title and right of possession, may peaceably enter, and upon showing his title, would be held not guilty of a trespass. Why? Is it not because the law gives him the right of entry? If, however, he enter by force, or after he is in, does acts which show that he did not enter to assert his title, but for oppression or vengeance, does it not follow that his justification in his title, the legal permission to enter, is destroyed by the intention manifested to do wrong; I apprehend it is clear that it is so. And so says Lord Coke in his report of the six Carpenters case “In the case of a general authority or license of law, the law adjudges by the subsequent act, quo animo, or to what intent he *324 entered, for acta exteriora indicant interiora secreta.” In other words, the subsequent act of abuse shows that his right of entry was used to cover his real intention, which was to do other tortious acts. The case of Jones v. Muldrow, Rice, 64, Cheves, 254,* may be appealed to as an illustration of my motion. There *325 the plaintiff was in the possession of the defendant’s land. He entered upon him, and committed many acts of violence. The jury found, as here, a large verdict of damages, which was sustained. How could that have been done on any other principle, than that the conduct of the defendant deprived him of his defence, of a legal right to enter by virtue of his title. The 2d ground, beyond all doubt, ought to receive little countenance, when it is remembered, that according to the proof, the defendant is a man of great wealth, and that against him this verdict is less by far than a verdict of §80, which I once heard pronounced against a poor man for blazing a pine tree on a desolate sand hill. There were many circumstances, which, if the jury believed, were surely of great aggravation, such as the entry of the elder Hannahan into Johnson’s, house against the will of his wife; the act of one of the irishmen in company with him, in palling her arm down from the door posts; his encouragement of the Irishmen to pursue the fugitive Englishman into the house, by telling them to tie him up and give him fifty lashes; the opening of the garden by cutting off one entire line of the fence; the defendant’s act in preventing the fence from being so put up inside of the ditch as to protect the garden; the almost entire destruction of the vegetables and flowers in the garden, and the great terror produced in the plaintiff’s family by the acts done by the men in defendant’s employment. Do not such circumstances warrant a heavy verdict? What is to be the limit? Can it be other than the discretion of twelve honest men? It is rare, I think, that an appellate Court ventures against the opinion of the Judge trying the cause, to grant a new trial on the ground of excessive damages. This case however, will constitute the precedent of such being done, not only against the opinion of the presiding Judge, but also against an array of aggravation which has led one jury to find #2500 damages, and may lead another to double it.

 The following is a full report of this case, by the Judge before whom it was tried at Darlington, Spring Term, 1840.
This was an action of trespass quare clausum fregit. For the facts accompanying the entry, the Court of Appeals is referred to the report made by my Brother Butler, of a previous trial of this case; Rice’s Reports, p. 64.
The only matters now intended to be submitted to the Court of Appeals, arise out of a recovery had by Gee against this plaintiff, and to them this report will be confined.
It appeared that the close was beyond all doubt once the property of Thomas Stephenson. As his property, it was sold by the-sheriff of Darlington, Richard Ingram to John Ingram; by John it war, conveyed to Bryant Ingram, by Bryant to Richard Ingram, by Richard to Pleasant R. Gee, who died intestate, having previously sold the land to the defendant Muldrow, but only a bond for titles had been executed. The heirs of Gee for Muldrow brought suit against this plaintiff, and his son James, for the recovery of the land- In that case, this plaintiff would have defended himself by sliowing the sale made by the sheriff of Stephenson’s land to be fraudulent, and th<r,-t his possession was under him: and he accordingly gave evidence to each of these points. It was, however, proved by the plaintiffs, that this plaintiff went into the possession of the land as the tenant of Richard Ingram: the plaintiffs in that case recovered, and this plaintiff was ejected from the possession by a writ of habere facias possessionem, and the defendant Muldrow putin possession. In about a year afterwards, this plaintiff, as the defendant’s tenant, Mrs. Woods, was removing, entered upon the land and retained possession under Stephenson.
The defendants contended that the plaintiff was concluded by the former recovery, and could not now set up Stephenson’s title. I did not think so. When his tenantcy to Ingram was shown in the former case, he was thereby estopped from relying on Stephenson’s title. The effect of a former recovery is to conclude all matters which were legally in issue, or which might have legally been put in issue between the parties, If Stephenson’s title could not have been adjudged in the former case, it follows that this plaintiff might now set it up.
It was abundantly proved, that the sale of Stephenson’s land by the sheriff was the basest fraud ever attempted tobe set up in a Court of Justice, and that the defendant, Gee, and all the grantees from the sheriff’s sale, well knew this. This plaintiff was the tenant of Stephenson, and had also his bond for titles.
The jury found for the plaintiff $600 damages; the defendants appeal on the annexed grounds:
1. Because the presiding Judge admitted evidence of a title on the part of the plaintiff that had bee* adjudicated on the former trial between Jones and Gee, under whom defendant claimed.
*325 2. Because, if a defendant acquires a title adverse to that of his landlord, it is his duty to give up the possession, and not to put his landlord to his action; and jf he stands a suit, and the suit is determined against him, it concludes all titles existing at the time.
Daiigan &, Sims, Defendant’s Attorneys.